IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

JAMES HENRY GIBBS                                                                                          PLAINTIFF

v.                                              No. 4:12CV00316 JLH

JEREMY MCNEIL, individually and in his
official capacity as an agent on behalf of the
Parkin Police Department;
CHARLES PATTERSON, individually and
in his official capacity as Mayor of Parkin;
and CITY OF PARKIN                                                                                      DEFENDANTS

**OPINION AND ORDER**

James Henry Gibbs brings this action against Officer Jeremy McNeil, Mayor Charles Patterson, and the City of Parkin, Arkansas, pursuant to 42 U.S.C. § 1983,[1] alleging violations of his rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, as well as a state law claim of unlawful arrest. The defendants have filed a motion for summary judgment. For the reasons explained below, the motion is granted.

**I.**

On August 3, 2010, James Gibbs was driving his vehicle, a 1995 Saturn two-door, in the City of Parkin. Gibbs was transporting various items of property in his car, and he was accompanied by Eddie Duckett, a passenger. Gibbs approached a one-lane bridge at the same time that McNeil approached in his patrol car from the opposite direction. McNeil yielded to allow Gibbs to cross first. As Gibbs testified,

> As our cars was passing one another, I flagged Officer McNeill [sic] down and I told him—I said, I notice you've been following me around. I understand that there is a

---

[1] Forty-two U.S.C. § 1983 does not establish substantive rights; it serves as a vehicle for vindicating federal constitutional and statutory rights. *See Henley v. Brown*, 686 F.3d 634, 640 (8th Cir. 2012).

house that's been broken into. This property that is in my car is mine. I am moving to Earle. And I said, if you want to search to see is anything stolen in it, you can.

Document #18-7 at 11. McNeil was familiar with Gibbs from previous encounters in which he had arrested him. Document #18-2 at 16. McNeil had also previously worked a break-in, and he thought that behavior was very strange, so he replied that he would search Gibbs's car. Documents #18-2 at 18, #18-5 at 3, #18-7 at 11. Gibbs pulled to the side of the road, got out of his car, and opened his trunk before McNeil exited his patrol car. Documents #18-2 at 18, #18-7 at 11. McNeil exited his vehicle and informed Gibbs that he "was going to pat him down for officer safety." Documents #18-2 at 18, #18-5 at 3. McNeil began a pat down and felt something in Gibbs's front pocket.[2] Documents #18-2 at 18, #18-5 at 3.

At this point, Gibbs's account diverges from those given by Duckett and McNeil.[3] Gibbs

---

[2] Gibbs's account does not include McNeil's conducting a patdown, but Gibbs also does not dispute that it occurred. Gibbs testified that McNeil "attempted to reach his hand in my pocket." Document #18-7 at 11.

[3] McNeil's affidavit of probable cause states, in pertinent part:

As I began to patt [sic] him down, Mr. Gibbs started struggling with me. I saw him pull a plastic sandwich baggy out of his pocket and could tell it appeared to be crack cocaine and marijuana. I tried to get it out of his hand and he threw it back in the car and it landed on the passenger side floorboard. The Passenger Eddie Duckett immediately jumped out of the car. I drew my duty weapon and requested immediate back up from any available law enforcement in the area. During this time, I had both suspect(s) at bay by gunpoint and a female came up interfering. By this time, Theo Melton (Parkin Fireman) pulled up and assisted me. I got all three put in handcuff(s) and a Earle Police unit and a Cross County unit arrived. Chief Dean Davidson was notified by Parkin Dispatch of the incident and requested to respond. I recovered the baggy which contained (5) individually packaged bags of what was believed to be crack cocaine and each bag weighed 0.4 gram and (4) individually packaged [sic] of what was believed to be marijuana and each bag weighed 0.9 gram. The baggy I recovered was what I saw with my own eyes that James Henry Gibbs threw into the vehicle.

states that McNeil asked him what he had in his pocket, grabbed him, and tried to throw him to the ground. Document #18-7 at 11. Gibbs bent down and got on the ground, and McNeil handcuffed him and left him in the middle of the road. Document #18-7 at 12. McNeil then ordered Duckett out of the car, handcuffed him, and put Gibbs and Duckett in the back of his patrol car. *Id.* McNeil searched the car and came up with a plastic bag of cocaine and marijuana. *Id.*

Gibbs and Duckett were taken to the Cross County Jail for processing. Parkin Police Chief Dean Davidson ordered the seizure of Gibbs's vehicle and the preparation of a confiscation report. Gibbs signed the confiscation report. Document #18-5 at 10. The next day, August 4, 2010, McNeil presented an affidavit of probable cause for Gibbs's arrest to Judge Joseph Boeckman. Document #18-5 at 3-4. Judge Boeckman issued a warrant for Gibbs's arrest and set his bond at $5,000.00. Document #18-5 at 2. After being held for twenty-four hours, Gibbs paid $500 and secured his release from the jail. Document #25-2 at 1. McNeil took the arrest paperwork and the confiscation report to Cross County Deputy Prosecuting Attorney Michael L. Ladd for the filing of a criminal information and a confiscation lawsuit against Gibbs's vehicle. On August 5, 2010, Ladd filed a forfeiture complaint in the Circuit Court of Cross County.[4] Document #18-6 at 1-2. However, Ladd did not serve the forfeiture complaint on Gibbs, nor did he file a criminal information against Gibbs. Gibbs's vehicle remains in the custody of the Parkin Police Department.

---

Document #18-5 at 3. Similarly, Eddie Duckett gave a signed voluntary statement that states, in pertinent part, "James got out of the car. The officer told James 'O.K.' I am going [to] patt [sic] you down first. James then starting [sic] fighting with the officer. James pulled a bag of crack and weed out of his pocket and the cop tried to grab it and James threw it back in the car. I did not touch it. I jumped out of the car because this was some crazy sh-t." Document #18-7 at 49-50.

[4] *State of Arkansas v. James Henry Gibbs 1995 Saturn 2Dr VIN # 168ZF1289SZ106759*, No. CV-2010-132-5. Document #18-9 at 2-3.

**II.**

A court should enter summary judgment if the evidence demonstrates that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). The moving party bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party meets this burden, the nonmoving party must respond by coming forward with specific facts establishing a genuine dispute for trial. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). In deciding a motion for summary judgment, a court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *PHL Variable Ins. Co. v. Fulbright McNeill, Inc.*, 519 F.3d 825, 828 (8th Cir. 2008). A genuine dispute exists only if the evidence is sufficient to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511. When a nonmoving party cannot make a showing sufficient to establish a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322-23, 106 S. Ct. at 2552.

**III.**

Gibbs argues that he was the victim of an unlawful traffic stop and arrest and that the City of Parkin unlawfully seized and held his vehicle. Gibbs further argues that McNeil and Mayor Patterson are not entitled to qualified immunity.

**A.      The Stop and Search of the Car**

Gibbs argues that McNeil violated the Fourth Amendment's protection against unreasonable searches and seizures of a person's effects because McNeil had no reasonable suspicion or probable cause to stop him and search his car. The defendants argue that Gibbs initiated contact with McNeil and invited him to search his car. Gibbs testified, "I flagged Officer McNeill [sic] down . . . . And I said, if you want to search to see is anything stolen in [my car], you can." Document #18-7 at 11. Later, he testified in response to questioning as follows:

> Q.      But [Officer McNeil's] whole purpose for being there, for the record, is you called him over and asked him to search your vehicle.
>
> A.      I gave him permission.

*Id.* at 15. Gibbs also stated that "I authorized him—he told me that some TV had got stolen, and I authorized him to search my vehicle for that TV." *Id.* at 16. Gibbs also gave a signed voluntary statement at the Parkin Police Department, which stated, "I don't know what to say but I stopped Officer O'Neil [sic] and asked did he want to look at my personal property to see was any of it stolen, because I knew a house had just [been] broken into." *Id.* at 47; *see id.* at 16-17. In his affidavit of probable cause, McNeil wrote, "I had never experienced such a situation before but Mr. Gibbs was acting extremely weird." Document #18-5 at 3. As McNeil later testified, "It didn't seem right to me at all why he would just stop me out of the blue to search his vehicle. I didn't understand." Document #18-2 at 18.

> A police officer may conduct a brief, investigatory stop of an individual if the officer reasonably suspects that the individual is involved in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). The officer may also conduct a patdown search of the individual if the officer believes the individual is armed and dangerous. *Id.* Reasonable suspicion must be based on specific, articulable facts. *Id.* at 21, 88 S. Ct. 1868. In determining whether an officer had reasonable suspicion based on specific, articulable facts, we "look at the totality of

> the circumstances, allowing officers to draw on their experience and training." *United States v. Hughes*, 517 F.3d 1013, 1016 (8th Cir. 2008) (citing *United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002)).
>
> * * *
>
> Reasonable suspicion does not require "absolute[ ] certain[ty];" rather, an officer must observe "unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot." *Terry*, 392 U.S. at 27, 30, 88 S. Ct. 1868.

*United States v. Lawhorn*, 735 F.3d 817, 820-21 (8th Cir. 2013) (second and third alterations in *Lawhorn*).

> Even without probable cause, if an officer has obtained voluntary consent to search, then the officer is free to search the vehicle provided the search stays within the scope of the consent. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973) ("It is equally well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent.").

*United States v. Guevara*, 731 F.3d 824, 829 (8th Cir. 2013).

Here, McNeil had just investigated a break-in when Gibbs initiated contact by flagging him down. Gibbs volunteered that he was aware of a recent break-in, stated that he was transporting various items of property, and invited Officer McNeil to search his car to determine whether any of the property was stolen. To McNeil, Gibbs's behavior was "extremely weird," and "didn't seem right . . . at all." McNeil "had never experienced such a situation before." Regardless, it is undisputed that Gibbs gave voluntary consent to search his vehicle. *See also United States v. McCraney*, No. 5:10CR304, 2011 WL 1559797, at *6 (N.D. Ohio Apr. 22, 2011) (unpublished) (officer had probable cause to effect a traffic stop when he encountered a car using its high-beam lights, the driver gestured out the window to flag down the officer, and then he followed the squad car for a few blocks and into an empty parking lot).

**B.     The *Terry* Frisk**

After pulling to the side of the road, Gibbs got out of his car and opened the trunk before McNeil exited his patrol car. McNeil got out, approached Gibbs, and informed him that he was going to perform a pat down. The test is whether "'a hypothetical officer in exactly the same circumstances' reasonably could believe that [Gibbs was] armed and dangerous." *United States v. Hanlon*, 401 F.3d 926, 929 (8th Cir. 2005) (quoting *United States v. Roggeman,* 279 F.3d 573, 580 n.5 (8th Cir. 2002)).

"At any investigative stop—whether there is an arrest, an inventory search, neither, or both—officers may take steps reasonably necessary to protect their personal safety." *United States v. Shranklen*, 315 F.3d 959, 961 (8th Cir. 2003). "In examining the relevant facts and inferences, we must keep in mind that minimally intrusive weapons searches at traffic stops will more likely be reasonable because of the inherent danger of traffic stops. In addition, one's expectation of privacy is diminished in an automobile as compared to in one's home." *Id.* at 962 (quotation marks and citations omitted). "We have previously stated that, when officers encounter suspected car thieves, they also may reasonably suspect that such individuals 'might possess weapons.'" *Hanlon*, 401 F.3d at 929 (citing *United States v. Rowland*, 341 F.3d 774, 784 (8th Cir. 2003); *Shranklen*, 315 F.3d at 963).

Here, the highly unusual behavior of Gibbs (flagging an officer down and asking that his vehicle be searched) coupled with the fact that McNeil could reasonably conclude that Gibbs carried a grudge because he had arrested Gibbs in the past, gave McNeil reason to be suspicious of Gibbs.[5]

---

[5] Even Duckett, the passenger in Gibbs's vehicle, was "tripped . . . out" by Gibbs's "crazy" behavior. Document #18-7 at 49-50.

In those circumstances, it was reasonable for McNeil to conduct a *Terry* frisk before entering the vehicle to search it to ensure that he was safe while conducting the search.

**C.     Arrest and Seizure**

Gibbs also contends that his arrest and the seizure of his vehicle were unconstitutional. The issue is whether McNeil had probable cause to arrest McNeil and seize the vehicle. Probable cause exists if the facts based on reasonably trustworthy information would justify a prudent person in believing that the individual arrested had committed an offense. *Copeland v. Locke*, 613 F.3d 875, 879 (8th Cir. 2010).

Here, McNeil testified that when he patted Gibbs down and felt something in his pocket, Gibbs pulled the bag of what appeared to be marijuana from his pocket and threw it inside the vehicle. After taking Gibbs to the ground and handcuffing him, McNeil searched the vehicle, found the bag, which field-tested positive for marijuana. Document #18-2 at 18-19. Duckett gave a statement in which he confirmed McNeil's account of the events. Document #18-7 at 49-50. Gibbs denies that he pulled a plastic bag from his pocket and threw it into the vehicle, and he denies possessing any controlled substances. Document #18-7 at 17-18, 25. Gibbs admits, however, that drugs were found in his car, even though he says that they belonged to Eddie Duckett and not to him. Document #18-7 at 41. He does not contend that McNeil planted the drugs in his car. No later than the time he found marijuana in the vehicle, McNeil had probable cause to arrest Gibbs. *United States v. Bell*, 480 F.3d 860, 864 (8th Cir. 2007); *United States v. Cummins*, 920 F.2d 498, 502 (8th Cir. 1990).

Arkansas law provides that a vehicle used for transporting controlled substances may be subject to forfeiture. Ark. Code Ann. § 5-64-505(a)(4). The statute further provides that property

8

subject to forfeiture may be seized by a law enforcement agency if the law enforcement agency has probable cause to believe that the property was used or is intended to be used in violation of the Arkansas Controlled Substances Act. Ark. Code Ann. § 5-64-505(c)(4). Upon finding drugs in the vehicle, McNeil had probable cause to believe that it was subject to forfeiture and therefore had probable cause to seize the vehicle.

Thereafter, McNeil submitted a confiscation report to the prosecutor pursuant to Ark. Code Ann. § 5-64-505(f)(2). The prosecutor then initiated forfeiture proceedings by filing a complaint with the circuit clerk of the county where the property was seized pursuant to Ark. Code Ann. § 5-64-505(g)(1)(A). The prosecutor did not, however, serve a complaint upon Gibbs as required by that same statute. Nevertheless, once the prosecutor initiated the forfeiture proceeding by filing the action in circuit court, the vehicle because subject to the jurisdiction of the court. Ark. Code Ann. § 5-64-505(e). At that point, Gibbs's remedy was to obtain an order from the circuit court directing that the automobile be released. *See* Ark. Code Ann. § 5-64-505(g)(5)(B)(iii)(b). The fact that the vehicle has not been released is not due to any conduct of any of the defendants. It is the prosecutor, not these defendants, who failed to serve Gibbs with the complaint. Moreover, that failure does not prevent Gibbs from filing an answer in the forfeiture proceeding and obtaining an order releasing the vehicle. These defendants have not violated Gibbs's constitutional rights regarding the vehicle.

## CONCLUSION

For the reasons stated, the defendants' motion for summary judgment is GRANTED. Document #18. The complaint of James Henry Gibbs is dismissed with prejudice.

IT IS SO ORDERED this 10th day of January, 2014.

                                                _____
                                                J. LEON HOLMES
                                                UNITED STATES DISTRICT JUDGE